UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MICHAEL D. GOODRICH,

    Plaintiff,

    v.

PETER B. TEETS,
Acting Secretary of the Air Force,

    Defendant.

Civil Action No. 05-391 (CKK)

**MEMORANDUM OPINION**
(September 26, 2007)

Plaintiff Michael D. Goodrich, a former Captain in the United States Air Force, brings

this action under the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.*, against Peter B.

Teets, in his capacity as Acting Secretary of the Air Force.  Before the Court are cross-motions

for summary judgment concerning two decisions by the Air Force Board for Correction of

Military Records ("BCMR") denying Plaintiff's applications to alter his military records.[1]  After

considering all of the Parties' filings, the relevant statutes and case law, and the administrative

record, the court shall [5] DENY Plaintiff's Motion for Summary Judgment and GRANT

[9] Defendant's Cross-Motion for Summary Judgment.  Although Plaintiff is clearly

disappointed with the BCMR's adverse decisions, an analysis of the foregoing does not lead the

---

[1] Plaintiff's Complaint also asserts a Freedom of Information Act claim that has subsequently been litigated and resolved in a separate proceeding. *See Goodrich v. Dep't of the Air Force*, Civil Case No. 04-1221-RJL (D.D.C. Aug. 22, 2005).  Plaintiff acknowledges that this claim is no longer at issue in the instant proceeding. *See* Plaintiff's Consolidated Reply to Defendant's Opposition to Plaintiff's Motion for Summary Judgment and Response to Defendant's Cross Motion for Summary Judgment ("Pl.'s Reply") at 2 ("[Plaintiff's] FOIA claim has been adjudicated and is no longer at issue in the case at bar").

Court to find any discernable arbitrariness, capriciousness, or error by the BCMR.

## I: BACKGROUND

### A.   Air Force Investigation

The facts underlying the instant suit are largely uncontested.[2]  Beginning June 17, 1990,

Plaintiff served as an Active Duty Captain in the United States Air Force.  Pl.'s Stmt. ¶ 1; Def.'s

Stmt. ¶ 1.  Plaintiff was assigned to Spangdahlem air base, Germany, where he worked as a

Board Certified pediatrician with full clinical privileges.  Pl.'s Stmt. ¶ 2; Def.'s Stmt. ¶ 1.

Plaintiff was also the Chief of the Spangdahlem air base adolescent health clinic.  Def.'s Stmt. ¶

1; Pl.'s Resp. to Def.'s Stmt. at 1.

In October 1995, while working as a pediatrician at the air base, Plaintiff mail-ordered

nine videotapes from a California-based company that were intercepted by German Customs

officials on suspicion of child pornography.  Pl.'s Stmt. ¶ 3; Def.'s Stmt. ¶ 2.  The videotapes had

plot lines that were "directed at adolescent activities and older men with younger boys."[3]  AR 2,

---

[2] As a preliminary matter, the Court notes that it strictly adheres to the text of Local Civil Rule 56.1.  For purposes of the present summary judgment motions, the Court "assumes that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion."  LCvR 56.1.  Accordingly, the Court's citations refer to Plaintiff's Statement of Material Facts as to Which Plaintiff Contends There Is No Genuine Issue (Pl.'s Stmt.) or Defendant's Statement of Material Facts Not in Genuine Dispute (Def.'s Stmt.) unless a statement is contradicted by the opposing Party.  The Court also cites directly to the administrative record (AR), where appropriate, to provide additional information not covered in either of the Parties' Statements.  Although the Parties' submissions reveal somewhat divergent views on the relevance of particular facts, there is no genuine dispute over the factual issues that this Court deems material.

[3] Plaintiff suggests that the Air Force did not sufficiently investigate the age of the actors to confirm they were adults.  *See, e.g.,* Pl.'s Stmt. ¶ 4 ("Evidence of the age of the actors performing on the videotapes was required to be on file with the production company in California but no effort was made to retrieve that information.").  Based on the administrative record, however, it does not appear that the *actual* ages of the actors was of paramount concern

Ex. B at 32; Def.'s Stmt. ¶2; Pl.'s Resp. to Def.'s Stmt. at 1-2.  German officials did not file any

charges against Plaintiff under their child pornography laws, although they did contact the Air

Force and report their findings.  Def.'s Stmt. ¶ 3, 4; Pl.'s Resp. to Def.'s Stmt. at 2-3.  The Air

Force executed a search warrant at Plaintiff's residence on February 1, 1996.  Def.'s Stmt. ¶ 5;

Pl.'s Resp. to Def.'s Stmt. at 3.  All nine videotapes were recovered, seven of which had been

viewed.  *Id.*

By memorandum dated February 21, 1996, Commander William J. Heitzeg notified

Plaintiff that he was initiating an administrative discharge action pursuant to Air Force

Instruction 36-3206, ¶¶ 3.2.1 ("moral dereliction") and 3.6.9 ("sexual perversion").  Def.'s Stmt.

¶ 9; Pl.'s Resp. to Def.'s Stmt. at 1.  Plaintiff sought to avoid the discharge proceedings by

tendering his resignation on March 8, 1996.  *See* AR 2, Ex. B at 4.  In his resignation letter,

Plaintiff indicated that he had "consulted with counsel" and that he tendered his resignation

"voluntarily."  *Id.*  Plaintiff also acknowledged that he could receive a "discharge under

honorable conditions (general)" unless the Secretary of the Air Force determined that he should

receive an honorable discharge.  *Id.*  By resigning, Plaintiff waived his right to an administrative

discharge hearing where specific factual findings would have been made concerning his

discharge status.  *See* AR 2 at 34.

---

to the BCMR.  For example, the Air Force Surgeon General's Memorandum summarizing his
inquiry into Plaintiff's circumstances (part of the administrative record considered by the BCMR)
stated "whether or not the actors were 18 years of age, there was concern that they portrayed or
depicted adolescents in the films."  AR 1 at 54.  Plaintiff acknowledges the same in his Motion.
*See* Pl.'s Mot. for Summ. J. at 9 ("the Air Force Surgeon General concluded that the videotapes
Plaintiff had purchased and possessed 'portrayed minors.'").  Therefore, the Court does not find
Plaintiff's statements regarding the actors' ages to affect the instant motions one way or the
other.

Plaintiff's resignation was accepted on July 29, 1996, and he received a discharge under honorable conditions (general).  Def.'s Stmt. ¶ 10; Pl.'s Resp. to Def.'s Stmt. at 1.  His separation from the Air Force became official on August 15, 1996.  Def.'s Stmt. ¶ 11; Pl.'s Resp. to Def.'s Stmt. at 1.  Plaintiff's official discharge certificate, called a "DD Form 214," contained a "BKL" separation code, which indicates a separation related to "sexual perversion."  Def.'s Stmt. ¶ 11; Pl.'s Resp. to Def's Stmt. at 1.

B.      *Air Force Credentials Hearings and Appeals*

Notwithstanding Plaintiff's decision to tender his resignation, the Air Force launched an inquiry in March 1996 to review whether Plaintiff's clinical privileges should be revoked for misconduct.[4]  Pl.'s Stmt. ¶ 7; Def.'s Resp. to Pl.'s Stmt. at 1.  On March 23, 1996, Colonel David E. Boggs, the Hospital Commander, notified Plaintiff that he intended to revoke all of his clinical privileges pursuant to Air Force Instruction ("AFI") 44-119.[5]  Def.'s Stmt. ¶ 13; Pl.'s Resp. to Def.'s Stmt. at 1; AR 1 at 37.  He explained that his action was based on "evidence of misconduct that seriously impairs [Plaintiff's] credibility within the health care system and [Plaintiff's] suitability to practice medicine, especially pediatrics."  *Id*.  In response to the letter, Plaintiff requested a credentials hearing to review Colonel Boggs' decision.  Def.'s Stmt. ¶ 14; Pl.'s Resp. to Def.'s Stmt. at 1.

---

[4] Most of the hearings associated with Plaintiff's credentials occurred after Plaintiff had tendered his resignation but prior to his discharge.  Plaintiff does not argue in his Motion for Summary Judgment that the Air Force acted improperly by continuing these proceedings after he tendered his resignation.

[5] AFI 44-119 (June 4, 2001) describes the procedures applicable to adverse actions and applies to "investigating, holding in abeyance, denying, suspending, limiting, or revoking clinical privileges."  *See* AR 1 at 59-65.

4

The Credential Hearing Committee met on June 6, 1996, to review the allegations against Plaintiff that "have impaired [Plaintiff's] overall effectiveness and credibility within the health care system, and abrogated [Plaintiff's] professional responsibilities." AR 1 at 38; Def.'s Stmt. ¶ 14; Pl.'s Resp. to Def.'s Stmt. at 1.  After considering all of the facts at issue, a majority of the three-member committee recommended that Plaintiff's privileges be reinstated without conditions.  AR 40-42; Def's Stmt. ¶¶ 15-16; Pl.'s Resp. to Def.'s Stmt. at 1, 5-6.  The Committee found that Plaintiff's conduct did "impair [Plaintiff's] overall effectiveness and credibility within the health care system" but did not "constitute a commission of an act of sexual abuse or exploitation."[6] AR 1 at 41;  Def's Stmt. ¶ 16; Pl.'s Resp. to Def.'s Stmt. at 1.  The dissenting member of the committee recommended limiting Plaintiff's privileges so that Plaintiff could treat patients under the age of 18 only if accompanied by chaperones."  AR 1 at 42; Def's Stmt. ¶ 16; Pl.'s Resp. to Def.'s Stmt. at 1.

On July 18, 1996, a Credentials Function Committee[7] met in an ad hoc session to consider the findings of the Hearing Committee.  AR 1 at 54; Def's Stmt. ¶ 17; Pl.'s Resp. to Def.'s Stmt. at 6.  The Committee recommended, by majority vote, limiting Plaintiff's clinical

---

[6] The Committee made other factual findings, including:  (1) Plaintiff attempted to conceal his conduct by drafting a fake letter from the videotape company suggesting it had sent Plaintiff the videotapes in error, (2) Plaintiff possessed other types of pornography in addition to the nine videotapes, and (3) Plaintiff had conversations with colleagues and acquaintances concerning sexual encounters with, or fantasies about, adolescents between the ages of 14 and 18.  *See* AR 1 at 40-41.  Plaintiff argues that these facts are immaterial to the instant proceedings, and Defendant does not press these facts in his Motion for Summary Judgment.  *See* Pl.'s Resp. to Def.'s Stmt at 5; Def's Mot. for Summ. J., generally.  Because these additional facts do not affect the outcome of the instant motions, the Court shall focus on the nine videotapes and not on the Committee's additional factual findings.

[7] AFI 44-119, ¶ 4.14, allows a Credentials Function to review information and any other matters resulting from an inquiry and make its own recommendations.

privileges to "patients not in the 10-18 year old age group," in addition to recommending therapy and a separation from the Air Force." *Id*. These recommendations were forwarded to Colonel Boggs on July 19, 1996. Def's Stmt. ¶ 17; Pl.'s Resp. to Def.'s Stmt. at 6. Despite these recommendations and those of the Hearing Committee, on August 5, 1996, Colonel Boggs rejected the recommendations and revoked all of Plaintiff's clinical privileges. Def.'s Stmt. ¶ 18; Pl.'s Resp. to Def.'s Stmt. at 1; AR 1 at 43.

Plaintiff, through counsel, appealed Colonel Boggs' decision on August 12, 1996, to the Air Force Surgeon General. Def.'s Stmt. ¶ 19; Pl.'s Resp. to Def.'s Stmt. at 1; AR 1 at 44-45. Plaintiff argued that his "only morally offensive conduct . . . involved possessing legal pornographic materials of a homosexual nature." AR 1 at 44. Plaintiff also relied on the opinion of an Air Force psychiatrist who testified at Plaintiff's Credentials Hearing that Plaintiff "carries no risk of potential harm to or mistreatment of patients." *Id*.

The Air Force Surgeon General Medical Practice Review Board (the "Board") considered Plaintiff's appeal on October 24, 1996.[8] Def's Stmt. ¶ 20; Pl.'s Resp. to Def.'s Stmt. at 1; AR 1 at 49. The Board reviewed a verbatim transcript of the credentials hearing and two of the videotapes at issue. *Id*. The Board concluded that "any pediatric or adolescent patients that [Plaintiff] might have contact with in a professional setting in the future could be endangered because [Plaintiff] demonstrated a preference for watching portrayals of sex between minors."

---

[8] According to AFI 44-119, ¶ 4.27, appeals made to the Surgeon General are reviewed by a Legal Advisor to the Surgeon General who provides comments on the legal aspects of the case. A specialty consultant reviews the medical aspects of the case and presents the case to the Air Force Medical Practice Review Board. Review of both the medical and legal recommendations are completed and a recommendation is made to the Surgeon General, who is the final authority for all related determinations.

AR 1 at 49-50; Def.'s Stmt. ¶ 20; Pl.'s Resp. to Def.'s Stmt. at 1.  The Board decided to modify

Colonel Bogg's decision and recommended that Plaintiff's privileges be limited by requiring

direct line of sight supervision for patients under the age of eighteen.  Def.'s Stmt. ¶ 20; Pl.'s

Resp. to Def.'s Stmt. at 1; AR 1 at 50.  On January 15, 1997, the Air Force Surgeon General

adopted the Board's recommendation as his final action, explaining that he was "convinced that

[Plaintiff's] conduct did potentially place the welfare of a vulnerable pediatric community in

question."  AR 1 at 55; Def.'s Stmt. ¶ 21; Pl.'s Resp. to Def.'s Stmt. at 1.

On January 24, 1997, the Surgeon General reported the limitations on Plaintiff's

credentials to external agencies, including the National Practitioner Data Bank ("NPDB").  Pl.'s

Stmt. ¶ 11; Def's Stmt. ¶ 22.  The Surgeon General's report to the NPDB stated that "[Plaintiff's]

clinical privileges are restored but limited by requiring direct line of sight supervision for all

patients under the age of eighteen.  The action is taken to insure the safety and welfare of the

pediatric community due to [Plaintiff's] demonstrated prurient interest in homo erotic and

pornographic materials which portray individuals as adolescents or in adolescent situations."[9]

AR 1 at 20; Def's Stmt. ¶ 22; Pl.'s Resp. to Def.'s Stmt. at 1.

---

[9] United States Congressman Barney Frank interceded on Plaintiff's behalf with a letter to Sheila Cheston, Air Force General Counsel, on April 15, 1997.  *See* AR 1 at 21.  In addition to questioning the fairness of the Surgeon General's report to the NPDB, Representative Frank observed that it was "offensive and wrong as a matter of fact to conclude that the 'pediatric community' is in great danger because [Plaintiff] showed a preference for watching sex between men than between men and women."  AR 1 at 22.  After reviewing the Congressman's letter and Plaintiff's file, the Air Force Surgeon General agreed to eliminate the phrase "homo erotic" from the report, but left the report unchanged in all other respects.  *See* AR 1 at 22.  The Surgeon General emphasized that "neither the Medical Practice Review Board nor I based our decisions on the sex of the actors, and the factor of sexual orientation was not in question.  I would have reached the same conclusion whether the actors were male or female, simply because they portrayed minors."  AR 1 at 55.

In response to the Surgeon General's report, Plaintiff drafted a letter to the Secretary of the Department of Health and Human Services requesting its removal from the NPBD. *See* AR 1 at 24. On September 22, 1997, the Secretary denied Plaintiff's request finding "no basis upon which to conclude that the report should not have been filed with the [NPDB]." *Id.* The Secretary also found "no evidence that the Air Force did not regard this matter as presenting a potential threat to patients and regarded the issue as a matter of professional conduct which could [affect] the health or welfare of a patient." *Id.*

C.      *Applications to the Air Force Board for Correction of Military Records*

On May 12, 1999, Plaintiff submitted an Application for Correction of Records to the BCMR asking "that his DD 214 [discharge form] be changed to reflect voluntary separation from the Air Force based on completion of his active duty service commitment, that the characterization be changed from general (under honorable conditions) to honorable and that all references to misconduct specifically, or by code, be removed from all his Air Force records." AR 2 at 6, 12-16. The application explained that the pornography at issue was "legally distributed by a California business" and asserted the "receipt and possession of such material should not be used to stigmatize a military member's service record." AR 2 at 15. While awaiting the BCMR's decision, Plaintiff filed a second application on February 8, 2000, asking the BCMR to remove "all references to limitations placed on his medical credentials . . . and that the report sent by the Surgeon General to the National Practitioner Data Bank (NPDB) and any other agencies outside the Air Force be withdrawn." AR 1 at 6, 9-11. The application stated that the Surgeon General's decision was not based on "evidence that [Plaintiff] presents any risk to adolescent patients," but instead "is grounded in fear and faulty assumptions." AR 1 at 16-17.

The BCMR denied both applications based on "insufficient evidence . . . to demonstrate

the existence of probable error or injustice."  AR 2 at 5; AR 1 at 5.  In reaching these decisions,

the BCMR considered, among other documents, Plaintiff's master personnel records, letters

drafted by Air Force personnel (including the Air Force Surgeon General), and Plaintiff's

applications (with attachments) submitted through counsel.  *Id*.  The BCMR found that "[t]he

applicant had the opportunity to present his contentions through the appropriate forum, however,

he elected to waive the administrative discharge board process and voluntarily submitted his

resignation."  AR 2 at 5.  The Board further found that the "characterization of his separation was

appropriate under given circumstances," AR 2 at 5, and found that "no persuasive evidence has

been provided showing that the report provided to the NPDB was inaccurate or improperly

submitted."  AR 1 at 5.  This suit followed on February 25, 2005.

D.      *Cross-Motions for Summary Judgment*

Plaintiff's Motion for Summary Judgment, filed on June 27, 2005, argues that the

BCMR's decisions violated the Administrative Procedure Act because "Plaintiff carried his

burden of demonstrating through clear and convincing evidence that military officials had failed

to properly perform their official duties."  Pl.'s Mot. for Summ. J. at 10, 12.  Specifically,

Plaintiff contends that (1) the Surgeon General's report to the NPDB was made in violation of

Department of Defense and Air Force regulations, and that (2) the basis for Plaintiff's discharge

from the Air Force does not provide grounds for assigning him a separation code of "BKL."

Pl.'s Mot. for Summ. J. at 9-11.  Defendant's Cross-Motion for Summary Judgment, filed on

August 8, 2005, argues that the BCMR's decisions were rational and supported by substantial

evidence.  Def's Cross Mot. for Summ. J. at 2.  Specifically, Defendant argues that the Air Force

Surgeon General was required to report Plaintiff's adverse action to the NPDB, and Plaintiff's separation code was appropriate and non-prejudicial, or in the alternative, was an issue Plaintiff waived by failing to raise it before the BCMR.  Def's Cross Mot. for Summ. J. at 13-16.

## II:  LEGAL STANDARDS

### A.    *Summary Judgment*

A party is entitled to summary judgment if the pleadings, depositions, and affidavits demonstrate that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994).  Under the summary judgment standard, Defendant, as the moving party, "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Plaintiff, in response to Defendants' motion, must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324.

Although a court should draw all inferences from the supporting records submitted by the nonmoving party, the mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  To be material, the factual assertion must be capable of affecting the substantive outcome of the litigation; to be genuine, the issue must be supported by sufficient admissible evidence that a reasonable trier-of-fact could find for the nonmoving party.  *Laningham v. U.S. Navy*, 813 F.2d

1236, 1242-43 (D.C. Cir. 1987); *Liberty Lobby*, 477 U.S. at 251-52, (the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law"). "If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (internal citations omitted). "Mere allegations or denials of the adverse party's pleading are not enough to prevent the issuance of summary judgment." *Williams v. Callaghan*, 938 F. Supp. 46, 49 (D.D.C. 1996). The adverse party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, while the movant bears the initial responsibility of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact, the burden shifts to the non-movant to "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Id.* at 587 (citing Fed. R. Civ. P. 56(e)) (emphasis in original).

      B.      *The Administrative Procedure Act ("APA")*

The BCMR is vested with considerable discretion in determining whether to take corrective action with respect to an applicant's record. The Secretary of the Air Force, acting through the Board, "may correct any military record of that department when he considers it necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a) (2007). The Secretary's denial of an application to the BCMR is "a final agency action reviewable under the Administrative Procedure Act." *Miller v. Lehman*, 801 F.2d 492, 496 (D.C. Cir. 1986). Pursuant to the APA, "[t]he reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in

accordance with law." 5 U.S.C. § 706(2)(A).

> The scope of review under the "arbitrary and capricious" standard is narrow and a court is not to substitute its judgment for that of the agency. Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made. In reviewing that explanation, we must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. The reviewing court should not attempt itself to make up for such deficiencies: We may not supply a reasoned basis for the agency's action that the agency itself has not given. We will, however, uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.

*Motor Vehicle Mfrs. Ass'n of the United States, Inc.*, 463 U.S. 29, 43 (1983) (internal citations and quotation marks omitted); *see also Cellco P'ship v. Fed. Commc'ns Comm'n*, 357 F.3d 88, 93-94 (D.C. Cir. 2004) (noting "arbitrary and capricious" review is "highly deferential . . . presum[ing] the validity of agency action . . . [which] must [be] affirm[ed] unless the Commission failed to consider relevant factors or made a clear error in judgment."). The "reasoned analysis" requirement is "not 'particularly demanding,'" and "is satisfied if the agency 'enables us to see what major issues of policy were ventilated and why the agency reacted to them as it did.'" *Republican Nat'l Comm. v. Fed. Election Comm'n*, 76 F.3d 400, 407 (D.C. Cir. 1996), *cert. denied*, 519 U.S. 1055 (1997) (quoting *Pub. Citizen, Inc. v. Fed. Aviation Admin.*, 988 F.2d 186, 197 (D.C. Cir. 1993) (internal punctuation omitted)). Moreover, the Court "must affirm if a rational basis for the agency's decision exists." *Bolden v. Blue Cross & Blue Shield Ass'n*, 848 F.2d 201, 205 (D.C. Cir. 1988). The degree of deference a court should pay an agency's construction is, however, affected by "the thoroughness, validity, and consistency of an

agency's reasoning." *Fed. Election Comm'n v. Democratic Senatorial Campaign Comm.*, 454 U.S. 27, 37 (1981).

Decisions of the BCMR are afforded an even greater level of deference than civilian administrative agencies because the judiciary is reluctant to interfere with internal military personnel decisions. *See Cone v. Caldera*, 223 F.3d 789, 793 (D.C. Cir. 2000) (applying an "unusually deferential application" of the APA standard to a decision of the Army Board for Correction of Military Records); *Kreis v. Secretary of the Air Force*, 866 F.2d 1508, 1514 (D.C. Cir. 1989) (holding, in the context of an Air Force Board for Correction of Military Records decision, that "perhaps only the most egregious decisions may be prevented under such a deferential standard of review"). Given this limited and deferential standard of review, the Court's inquiry in the instant case is a narrow one; the Court may only "determine whether the Secretary's decision making process [through the BCMR] was deficient, not whether his decision was correct," *Kreis,* 866 F.2d at 1511, and the BCMR's decisions must remain undisturbed unless the Court finds they were "'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.'" *Miller*, 801 F.2d at 496 (quoting 5 U.S.C. sec 706(2)(A)).

### III:  DISCUSSION

*A.       Reporting to the National Practitioner Data Bank*

Plaintiff first argues that the BCMR's decisions were flawed because the Air Force Surgeon General's notification to the NPDB violated binding Department of Defense and Air Force regulations.  P's Mot. for Summ J. at 10.  The Court disagrees.

The NPDB was established by the Health Care Quality Improvement Act of 1986, Pub. L. No. 99-660, 100 Stat. 3784 (codified as amended at 42 U.S.C. §§ 11101-11152 (2007)).  The

NPDB functions as a repository for information "relating to the professional competence and conduct of physicians, dentists and other health care practitioners." 45 C.F.R. § 60.1 (2007).

Plaintiff's central argument is that Department of Defense Directive (DoDD) 6025.13(D)(1)(e) (May 4, 2004) (hereinafter "paragraph (D)(1)(e)") prohibited the Air Force Surgeon General from reporting Plaintiff's misconduct to the NPDB.[10]  *See* Pl.'s Mot. for Summ J. at 10; Def.'s Cross Mot. for Summ. J. Ex. 1.  Paragraph (D)(1)(e) provides:

> The NPDB shall be queried for physicians and dentists before appointment and reappointment to the medical or dental staff. Reportable acts of misconduct for DoD healthcare practitioners are listed in enclosure 4.  Reports shall be made to the NPDB in cases of adverse actions and malpractice claims payment in accordance with the policy and procedures outlined in DoD Directive[] . . . 6025.14 . . . and DoD Instruction 6025.15.

Plaintiff reads the second sentence of paragraph D(1)(e) as authorizing the Surgeon General to send reports to the NPDB only when his reports concern the acts of misconduct listed in enclosure 4.  Pl.'s Mot. for Summ. J. at 10.  Plaintiff argues that his "interest in pornographic materials" is not listed in enclosure 4, and therefore, the Surgeon General improperly reported Plaintiff's clinical limitations to the NPDB.  *Id*.  There are two main problems with Plaintiff's approach.

First, enclosure 4 does not purport to list the acts of misconduct reportable to the NPDB – it lists the acts of misconduct reportable to the "Surgeons General, the Federation of State Medical Boards, and the appropriate State agencies under DoDD 6024.14."  *See* DoDD 6025.13

---

[10] The Department of Defense regulations discussed herein apply to the Air Force.  *See, e.g.*, DoD Instruction (DoDI) 6025.15, ¶ 2.1 (May 4, 2004) (implementing the National Practitioner Data Bank reporting requirements and expressly including "the Army, Navy, and the Air Force").  *See* AR 1 at 67.

(encl. 4); Def.'s Cross Mot. for Summ. J. Ex 1.  The portion of paragraph (D)(1)(e) that

references NPDB reporting is the third sentence, which provides that "[r]eports shall be made to

the NPDB in cases of adverse actions . . . in accordance with the policy and procedures outlined

in DoD Directive[] . . . 6024.14 . . . and DoD Instruction 6025.15."  An "adverse privileging

action," in turn, is defined as "[t]he denial, suspension, or revocation of clinical privileges based

upon misconduct, professional impairment, or lack of professional competence."  DoDD 6025.13

(encl. 2); Def.'s Cross Mot. for Summ. J. Ex 1.[11]  Because Plaintiff in the instant matter was

subject to an adverse privileging action, *see* AR 1 at 53 (Air Force Surgeon General's description

and evaluation of the "adverse privilege action taken against [Plaintiff]"), paragraph (D)(1)(e)

appears to authorize (not prohibit) the Air Force Surgeon General's report to the NPDB.[12]

The second problem associated with Plaintiff's approach to NPDB reporting is that it

relies on the unfounded assumption that paragraph (D)(1)(e) provides the only authorization for

the Surgeon General's NPDB reports.  In fact, Defendant identifies several other regulations –

including those referenced in paragraph (D)(1)(e) – that contain NPDB reporting provisions.

One such example is DoDI 6025.15, which "[e]stablishes DoD policy, assigns responsibilities,

---

[11] DoDD 6025.13 does not define "adverse action," however, the Court finds that paragraph (D)(1)(e) likely refers to "adverse privileging actions" because of the reference, in the same sentence, to DoDD 6025.14.  That Directive provides that "[i]nformation on *adverse privileging actions* and other professional review actions shall be reported to the appropriate State agencies and the NPDB."  DoDD 6025.14, ¶ 4.4 (May 4, 2004) (emphasis added).  *See* Def.'s Cross Mot. for Summ. J. Ex. 2.

[12] Lending further support to this interpretation is the letter drafted by the Secretary of the Department of Health and Human Services (the department responsible for maintaining the NPDB) in response to Plaintiff's request to have the Surgeon General's report removed from the NPDB.  *See* AR 1 at 24.  The Secretary denied Plaintiff's request because he found "no basis upon which to conclude that the report should not have been filed with the [NPDB]."  *Id.*

and prescribes procedures for complying with [Department of Defense Participation in the

National Practitioner Data Bank]." DoDI 6025.15, ¶ 1.1 (May 4, 1004); AR 66-75. That

provision requires the Surgeon General to file reports to the NPDB "in cases of adverse

privileging actions . . . ." DoDD 6025.15, ¶ 4.2. Another example is Air Force Instruction 44-

119, a provision that requires the Air Force Surgeon General's Office to notify the NPDB when

physicians "have their privileges limited, denied or revoked." AFI 44-119, ¶ 6.10.1 (June 4,

2001).

     In response to Defendant's identification and discussion of these regulations, Plaintiff

reconstructs his argument, asserting if Defendant's argument is correct – that "'the Surgeon

General was required to report to the NPDB <u>any</u> adverse action affecting a physician's

privilege'" – then the regulations authorizing the report should be considered invalid. Pl.'s Reply

at 14, 15 (emphasis in original). Plaintiff reasons that the Health Care Quality Improvement Act

of 1986 only permits reports to be filed with the NPDB for misconduct relating to "an individual

physician's profession." Pl.'s Reply at 14 (emphasis omitted). Because "the administrative

record is devoid of any evidence that negatively implicated Plaintiff's professional competence

or professional conduct as a physician," Pl.'s Reply at 13 (emphasis omitted), Plaintiff surmises

that the Surgeon General's report to the NPDB was improper even if enclosure 4 is disregarded.

*Id.*

     Plaintiff's argument fails on its facts. The administrative record contains substantial

evidence that the Air Force and the BCMR believed Plaintiff's misconduct related to his

"professional competence or professional conduct as a physician." *Id.* For example, on March

23, 1996, Colonel Boggs notified Plaintiff that he intended to revoke his credentials based on

"evidence of misconduct that seriously impairs [Plaintiff's] credibility within the health care system and [Plaintiff's] suitability to practice medicine, especially pediatrics." AR 1 at 37. On January 15, 1997, the Air Force Surgeon General adopted the recommendations of the Medical Practice Review Board that limited Plaintiff's credentials because he believed Plaintiff's "conduct did potentially place the welfare of a vulnerable pediatric community in question." AR 1 at 54-55. On January 24, 1997, the Surgeon General sent a report to the NPDB "to insure the safety and welfare of the pediatric community due to [Plaintiff's] demonstrated prurient interest in pornographic materials which portray individuals as adolescents or in adolescent situations." AR 1 at 58. On June 16, 1997, the Air Force Deputy Surgeon General explained that Plaintiff was subject to a "'professional review action, based on reasons related to professional competence or conduct, adversely affecting clinical privileges for a period longer than 30 days.'" AR 1 at 50. Plaintiff cannot support the factual premise that Plaintiff's misconduct was unrelated to his professional conduct or competence, and thus his argument concerning the scope of the regulations must fail.[13]

Based on the applicable Department of Defense and Air Force regulations and the facts

---

[13] Because the Court rejects the factual premise underlying Plaintiff's argument, the Court declines Plaintiff's invitation to examine the limits of the Department of Defense and Air Force regulations in the context of the Health Care Quality Improvement Act of 1986, 42 U.S.C. §§ 11101-11152. *See* Pl.'s Reply at 13-15. The Court notes, however, that Plaintiff's arguments concerning those regulations appear to advocate a result that contradicts the stated purposes behind creation of the NPDB. As discussed above, the NPDB is used as a repository for information "relating to the professional competence and conduct of physicians, dentists and other health care practitioners." 45 C.F.R. § 60.1 (2007). Given the Air Force Surgeon General's findings that Plaintiff's misconduct could endanger "the safety and welfare of the pediatric community," AR 1 at 58, preventing the Air Force Surgeon General from filing a report with the NPDB based on a narrow definition of misconduct strikes the Court as particularly unlikely to effectuate the scheme intended by Congress or the military regulations issued thereto.

found in the administrative record, the Court is not persuaded that the Surgeon General violated

binding Department of Defense and Air Force regulations when it reported Plaintiff's clinical

limitations to the NPDB.

     *B.*     *Plaintiff's Separation Code*

     Plaintiff's second argument is that the circumstances surrounding Plaintiff's discharge

from the Air Force do not provide grounds for assigning him a separation code of "BKL"

(meaning "sexual perversion").  Pl.'s Mot. for Summ. J. at 11.  Plaintiff argues that the record is

devoid of evidence suggesting that his conduct was illegal, a violation of any regulations or

related instructions, and there is "no evidence that there was anything wrong with Plaintiff's

actions other than Air Force officials apparently disliking his choice of entertainment."  *Id.*

Plaintiff also argues that there is no evidence that "ordering, receiving, possessing, or viewing

videotapes portraying 'acts of masturbation, sodomy, giving and receiving enemas, male

homosexual acts, and sado-masochistic acts' is an 'act of sexual perversion.'"[14]  *Id.*

     As discussed above, this Court's review "does not dive deeply into the merits, being more

concerned with whether the Secretary followed the prescribed procedures, considered all the

evidence, and reached a result that . . . is not unreasonable."  *Piersall v. Winter*, Civ. A. No. 03-

1770, 2007 U.S. Dist. LEXIS 61132, at *20 (D.D.C. Aug. 21, 2007).  As such, the BCMR's

decision as it relates to Plaintiff's separation code will not be disturbed if the BCMR denied

---

[14] Defendant argues that Plaintiff has waived his arguments concerning the BKL separation code because "[n]either Plaintiff's affidavit nor his 'Brief of Counsel' made any specific reference to the use of the code 'BKL,' or made any argument as to the proper use of the code" before the BCMR.  Def's Mot. for Summ. J. at 14.  The Court disagrees.  Plaintiff asked that "all references to misconduct specifically, or by code, be removed from his Air Force records."  AR 2 at 6, 13.  Although the BKL separation code was not specifically identified by Plaintiff, the Court finds that it is fairly characterized as "misconduct" referenced "by code."

Plaintiff's request based on a rational connection to the underlying facts.  *See Frizelle v. Slater*,

111 F.3d 172, 176-77 (D.C. Cir. 1997) (holding that BCMR decisions should be upheld as long

as there is a "'rational connection between the facts found and the choice made'") (quoting

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Ins. Co.*, 463 U.S. 29, 43 (1983)).

In the instant matter, Plaintiff was a practicing pediatrician and chief of an adolescent

health clinic when the Air Force launched an investigation into his conduct.  Pl.'s Stmt. ¶¶ 1-3;

Def.'s Stmt. ¶¶ 1-2.  The investigation revealed that Plaintiff had mail-ordered nine videotapes

that portrayed adolescents engaging in various sexual acts.  Pl.'s Stmt. ¶ 9; Def.'s Stmt. ¶ 2; Pl.'s

Resp. to Def.'s Stmt. at 1-2.  Plaintiff resigned rather than challenge these findings at an

administrative discharge proceeding, *see* AR 2 at 34, but in any event, these facts are not in

dispute.  The administrative record also contains the following observations considered by the

BCMR:

> From the Air Force Surgeon General:  "the facts and circumstances
> surrounding the allegations – a pediatrician obtaining through the
> mails and possessing video tapes portraying [various sexual acts] –
> are particularly egregious.  In our opinion, that behavior, in and of
> itself, was sufficiently serious to warrant the general discharge
> [Plaintiff] received" (AR 2 at 34);
>
> From the Staff Judge Advocate: "[Plaintiff's] behavior, especially
> as he is a pediatrician and adolescent health care provider, certainly
> causes one to question his suitability as an Air Force officer" (AR
> 2, Ex. B at 24);
>
> From Colonel David E. Boggs: "[Plaintiff's misconduct] seriously
> impairs [Plaintiff's] credibility within the health care system and
> [Plaintiff's] suitability to practice medicine, especially pediatrics"
> (AR 1 at 37).

Plaintiff's argument is that a separation code referring to "sexual perversion" was

unwarranted by the facts before the BCMR.  Pl.'s Mot. for Summ. J. at 11.  The BCMR denied

Plaintiff's application to alter his military records because there was insufficient evidence "to

demonstrate the existence of probable error or injustice."  AR 2 at 5; AR 1 at 5.  Based on the

standard of review with which this Court must evaluate the facts in the administrative record, and

based on the facts and observations identified above, the Court cannot find that the BCMR's

decision to deny Plaintiff's request was without support.[15]

   C.     *Plaintiff's Supplemental Arguments*

        The Court's disposition of the arguments above address both of the claims raised by

Plaintiff in his Motion for Summary Judgment.  In Plaintiff's Reply, however, Plaintiff argues

that the decision by the BCMR was arbitrary because it "failed to address arguments raised by

Plaintiff," and in particular, "failed to discuss the affidavit of the military psychiatrist or the

issues raised therein."  Pl.'s Reply at 9.  This argument, although included in Plaintiff's

Complaint, *see* Compl. ¶ 16, was not present in his Motion for Summary Judgment.  *See* Pl.'s

Mot. for Summ. J., generally.  The Court does not ordinarily entertain arguments that are raised

in such a posture.  *See Herbert v. National Academy of Sciences*, 974 F.2d 192, 196 (D.C. Cir.

1992) (holding that arguments raised in an appellate reply brief would not be considered because

"an argument discussed for the first time in reply would be manifestly unfair to the appellee who

. . . has no opportunity for a written response"); *United States v. Caicedo-Llanos*, 960 F.2d 158,

164 (D.C. Cir. 1992) (admonishing litigants that it "[w]ill not ordinarily entertain arguments

---

[15]  Because the Court finds sufficient evidence in the administrative record supporting the
BKL designation, the Court does not reach Defendant's alternative argument that "Plaintiff
cannot possibly show that he suffered injustice through the Air Force's use of the BKL code."
Def.'s Mot. For Summ. J. at 16.

inadequately briefed . . . [and] [c]onsequently . . . will not indulge arguments raised for the first time in an appellant's reply brief").  Nevertheless, because Defendant had the opportunity to respond to Plaintiff's argument in his Reply to Plaintiff's Opposition to Defendant's Cross Motion for Summary Judgment ("Def.'s Reply"), the Court shall exercise its discretion to hear Plaintiff's argument.

As stated above, Plaintiff asserts that the BCMR failed to address various of his arguments.  Pl.'s Reply at 9.  The Court finds, however, that the BCMR set forth the documentary materials it considered, recited the arguments made by Plaintiff and relevant Air Force officials, and gave the basis for its decision.  *See* AR 1 at 3-5; AR 2 at 3-5.  Defendant correctly argues that the BCMR did not ignore the psychiatrist's affidavit because the BCMR stated that it had "thoroughly review[ed] the documentation that ha[d] been submitted in support of the [Plaintiff's] request," AR 1 at 5, and the psychiatrist's affidavit was part of those materials. *See* AR 1 at 3, 16-17; Def.'s Reply at 5.  The BCMR is entitled to articulate its reasoning through reference to other materials.  *See Environmental Defense Fund, Inc. v. EPA*, 465 F.2d 528, 537 (D.C. Cir. 1972) (permitting an agency to articulate the basis for its decision by reference to clearly relevant sources).  *See also Frizelle v. Slater*, 111 F.3d 172, 176 (D.C. Cir. 1997) (holding that a court may uphold a decision "of less than ideal clarity" if the BCMR's decision makes a rational connection between the facts found and the choice made.").  Because the BCMR's decision makes the necessary rational connection between the facts in the administrative record and the choices made, the Court finds no basis in the record for interfering with the BCMR's decisions.

Finally, Plaintiff's Reply also includes a claim that the BMCR's decisions were "not in

accordance with the law" because a provision on which Commander William J. Heitzeg relied to

initiate administrative discharge proceedings – AFI 36-3206, ¶ 3.6.9 ("sexual perversion") – does

not prohibit "viewing videotapes" of sexually perverse conduct, but only prohibits "engaging in"

such conduct.  Pl.'s Reply at 5-7.  The Court declines to consider this claim because it was not

included in Plaintiff's Complaint.  *See DSMC, Inc. v. Convera Corp.*, 479 F. Supp. 2d 68, 84

(D.D.C. 2007) (rejecting "[plaintiff's] attempts to amend its complaint through its opposition to

[defendant's] motion for summary judgment.").[16]

## IV:  CONCLUSION

For the reasons set forth above, the Court shall deny [5] Plaintiff's Motion for Summary

Judgment and grant [9] Defendants' Cross-Motion for Summary Judgment.  An appropriate

Order accompanies this Memorandum Opinion.


Date:    September 26, 2007


                                     ／s／
                                     COLLEEN KOLLAR-KOTELLY
                                     United States District Judge


---

[16] Even if the Court were to address Plaintiff's claim, it would reject it.  Plaintiff fails to explain why "sexual perversion," as it is defined in AFI 36-3206, ¶ 3.6.9, could not rationally be viewed by the BCMR as an "indecent act or offense."  Plaintiff also fails to explain why the BCMR could not rationally consider Plaintiff's conduct "moral dereliction" under ¶ 3.2.1 (the other provision of AFI 36-3206 that Commander Heitzeg had referenced when notifying Plaintiff of the discharge proceedings).  *See* Pl.'s Reply at 5-7; AR 2, Ex. B at 19.